FILED

2019 Oct-18  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **KIAWANA D. NEAL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE** |
| | ) | **NUMBER: _____** |
| **LIFE INSURANCE COMPANY** | ) | |
| **OF NORTH AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Comes now the Plaintiff, Kiawana D. Neal, and hereby files her Complaint against Life Insurance Company of North America.

## PARTIES

1.     The Plaintiff, Kiawana D. Neal ("Ms. Neal"), is an insured under Laboratory Corporation of America Holdings, Long Term Disability ("LTD") Insurance Policy No. LK-980074 ("the Plan").

2.     Defendant, Life Insurance Company of North America ("LINA") is the Administrator of the Plan. Upon information and belief, LINA is a foreign corporation incorporated in the Commonwealth of Pennsylvania, which conducts business generally in the State of Alabama and specifically within this District.

.

## JURISDICTION AND VENUE

3.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq.  Plaintiff asserts claims for long term disability benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. §1132.  This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties.  29 U.S.C. §1132(a),(e)(1) and (f) and 28 U.S.C. §1131.  Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b).

## INTRODUCTION

4.     Ms. Neal was subjected to improper claim handling procedures by LINA as they exploited the shortcomings of ERISA as it relates to claims for "welfare" benefits to avoid paying Ms. Neal's valid claim for disability benefits. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983).  Ms. Neal, as an employee insured for disability, was supposed to be treated as a beneficiary by the Defendant as statutory fiduciaries. Instead, the Defendant has breached those duties by engaging in improper claim handling procedures.  As described in more detail below, the Defendant has engaged in bad faith claim handling and Ms. Neal, at minimum, is entitled to *de novo* review and all relief that ERISA provides.

## STATEMENT OF FACTS

5.     Ms. Neal is an insured for benefits under the Plan. LINA ("Defendant") is the administrator of the Plan. The Plan provides insureds, like Ms. Neal, LTD benefits.

6.     Ms. Neal worked at Laboratory Corporation of America Holdings as a Project Specialist until her disabilities forced her to stop working on or about April 21, 2017.  Her occupation required her to compile and evaluate standardization and protocols, make recommendations to management, and coordinate implementation of new equipment/methodologies. Some of the administrative skills required of a Project Specialist are to answer telephones, maintain logs/records, organization skills, proficiency with numbers, research information, time management and written and verbal communication.

7.     Ms. Neal was forced out of work on April 20, 2017 due to a transient ischemic attack leading to dyspnea, chest pain, and severe anxiety.

8.     As a result of Ms. Neal's disability and her inability to continue doing her job, Ms. Neal applied for LTD benefits on October 17, 2017.

9.     The Plan at issue states, in part:

**Definition of Disability/Disabled**
The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:

1. Unable to perform the material duties of his or her Regular Occupation; and

3

2.  Unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.

10.     Despite an abundance of evidence from her treating medical providers that Ms. Neal was unable to return to work following her stroke, LINA informed Ms. Neal by letter dated December 7, 2017, that her claim for LTD benefits was denied.

11.     At the time of the December 7, 2017 denial, there was ample medical evidence in the claims file to support Ms. Neal's claim for benefits.

12.     LINA erroneously relied on the opinions of paid reviewers and failed to even note that Ms. Neal's treating therapist, Ms. Angel Boyd-Gilyard, had continuously and repeatedly written her out of work for restrictions.

13.     LINA attempted to justify its denial by claiming Ms. Boyd-Giluard indicated that Ms. Neal was fully oriented and had an appropriate appearance during her treatment from June 6, 2017 through October 17, 2017, despite the fact that Ms. Boyd-Gilyard had written Ms. Neal out of work from April 20, 2017 through October 1, 2017.

14.     At the time of her LTD decision on December 7, 2017, Ms. Neal's medical disabilities include post-traumatic stress disorder, major depressive disorder, generalized anxiety disorder, insomnia, transient ischemic attack, and cerebrovascular disease. These diagnoses were rendered by her treating medical

providers after examination of Ms. Neal. As a result of her conditions, Ms. Neal suffers from panic attacks, visual disturbances, intermittent shortness of breath, palpitations, near syncope, chest pain, difficulty with speech, seizures, severe anxiety, episodes of numbness/weakness, and excessive fatigue. The medications prescribed for her conditions are sedating and impair her ability to concentrate. The symptoms of her impairments render Ms. Neal unable to perform her own occupation or any reasonable work.

15.     In the medical record for appointment on May 8, 2017, Dr. Khan, one of Ms. Neal's treating providers, noted Ms. Neal's inability to verbalize her thoughts because she was so anxious and short of breath was noted. Dr. Khan also noted that Ms. Neal's anxiety leads to palpitations, vertiginous symptoms, and other feelings of presnycope.

16.     A Healthcare Provider Statement from Heather Boscia, NP was filled out on behalf of the carrier on May 11, 2017. Ms. Boscia noted that Ms. Neal was precluded from work because she was "unable to perform any of her essential job duties" and was referred to a neurologist. (*See* Health Care Provider Statement dated May 11, 2017, attached hereto as "Exhibit A"). On this date, Ms.  Boscia estimated a July 20, 2017 return to work date.

17.     Approximately one week later, on May 18, 2017, Ms. Boscia completed another assessment at the request of the carrier in which she again

indicated that Ms. Neal was "totally unable to work" due to her cerebrovascular disease, shortness of breach, chest pain, and severe anxiety. (*See* Attending Provider Statement dated May 18, 2017, attached hereto as "Exhibit B").  Ms. Boscia noted Ms. Neal has difficulty with speech, chest pain, and severe anxiety. On this date, Ms. Boscia estimated an August 20, 2017 return to work date.

18.    At each subsequent appointment, Ms. Boscia delayed Ms. Neal's return to work date because of the deterioration of her condition and exacerbation of her symptoms.

19.    In the medical record for appointment on June 22, 2017, Dr. Khan recommended that Ms. Neal see a psychiatrist for treatment of her depression. Ms. Neal complied with this recommendation and furthered her care with Dr. Uzma Faheem, board certified in Psychiatry, beginning August 2, 2017.

20.    In an undated Healthcare Provider Statement, Ms. Boyd-Gilyard, Ms. Neal's Licensed Clinical Social Worker, indicated that Ms. Neal's stress level would be elevated while performing the duties of her occupation and that Ms. Neal "has challenges w/ completing normal daily activities." (Heath Care Provider Statement, attached hereto as "Exhibit C"). Ms. Boyd-Gilyard also indicated that Ms. Neal would be incapacitated by her medical conditions for a period of April 20, 2017 through October 1, 2017. This period would be enlarged on forms completed on August 3, 2017, September 5, 2017, and September 14, 2017.

21.     By letter dated December 30, 2017, Ms. Neal filed her first appeal of the wrongful termination of her LTD benefits for her physical and mental conditions. Ms. Neal was not represented by counsel for this appeal.

22.     Following the initial denial by LINA on December 7, 2017, Ms. Neal continued to receive treatment for her disabling conditions as her mental health continued to deteriorate. Ms. Neal attended an appointment with her psychiatrist, Dr. Faheem, on December 22, 2017 where she reported worsening panic attacks. She was diagnosed with depression and anxiety rising to the level of panic attacks. Dr. Faheem ordered a discontinuation of Prozac and started Ms. Neal on 50mg of Zoloft daily for two weeks, then would up the dose to 100mg daily. Ms. Neal was to continue her Seroquel use.

23.     Ms. Neal continued to attended regular appointments with Dr. Faheem from January 24, 2018 through July 30, 2018, all of which were submitted to LINA. At these appointments, she continued to receive treatment for Major Depressive Disorder and Panic Disorder with agoraphobia and moderate panic attacks.

24.     In addition to the treatment with Dr. Faheem, Ms. Neal continued treatment with Dr. Fozia Khan and Heather Boscia, NPO during the period following the December 7, 2017 denial by LINA. She received treatment for her depression, insomnia, and anemia at several appointments from January 8, 2018

7

through August 1, 2018. It was noted during an appointment on May 10, 2018 that Ms. Neal reported having mood swings and lack of concentration.

25.     During the appeals process, LINA hired Dr. Eric Chavez, a paid paper reviewer to evaluate Ms. Neal's file. In a report dated March 5, 2018, and despite the overwhelming medical evidence to the contrary, Dr. Chavez found that Ms. Neal was not disabled.

26.     During the appeals process, LINA also hired Dr. Mostafa Franche, another paid paper reviewer to evaluate Ms. Neal's file. In a report dated March 7, 2018, and despite the overwhelming medical evidence to the contrary, Dr. Franche concluded that Ms. Neal was not disabled.

27.     LINA once again refused to award LTD benefits and upheld their denial of benefits via letter dated March 9, 2018. LINA continued to justify the denial of Ms. Neal's claim with the flawed opinions of non-treating medical reviewers.

28.     Despite the clear contradiction of the report of Dr. Eric Chavez and support of the other evidence in the claims file indicating impairment from a psychological perspective, LINA still found Ms. Neal had no functional limitations in their letter of March 9, 2018.

29.     Following the March 9, 2018 denial of her appeal, Ms. Neal continued to seek treatment for her disabling conditions.

30.     In the Physician Statement completed by Dr. Faheem at the request of the carrier, dated August 8, 2018, it was indicated that Ms. Neal suffers from major depressive disorder. Dr. Faheem noted that Ms. Neal was very anxious and experiencing social pressure, extreme fatigue, and social disconnection.

31.     By letter dated September 5, 2018, Ms. Neal, by and through counsel, filed the second appeal of the wrongful termination of her LTD benefits. (*See* Appeal letter without Attachments dated September 5, 2018, attached hereto as "Exhibit D"). Included with that appeal were a number of treatment records from Dr. Faheem, Heather Boscia, and Dr. Khan.

32.     LINA once again paid multiple professional reviewers to review Ms. Neal's medical records who failed to take into account her treating providers' opinions.

33.     During the appeals process, LINA hired Dr. Marcus Goldman, a paid paper reviewer to evaluate Ms. Neal's file. Despite the overwhelming medical evidence to the contrary, Dr. Goldman concluded that Ms. Neal was not disabled. Dr. Goldman arrived at this flawed conclusion even after speaking with Ms. Neal's primary care physician, Heather Boscia, NP, and being informed that Ms. Neal's symptoms interfere with her life, and that Ms. Neal required assistance from her husband to function.

34.     During the appeals process, LINA also hired Dr. Leonid Topper, another paid paper reviewer to evaluate Ms. Neal's file. In a report dated October 25, 2018, Dr. Topper concluded that Ms. Neal was not disabled despite the overwhelming medical evidence to the contrary. Dr. Topper did note that the medical records and his teleconference with Ms. Neal's primary care provider supported that Ms. Neal's primary difficulty is stemming from anxiety and depression.

35.     Despite the additional proof of her disability and the arguments of counsel during her appeals process, by letter dated November 13, 2018, LINA once more unjustifiably denied Ms. Neal's LTD benefits. The final denial letter, like the previous letters, improperly found that Ms. Neal was capable of performing her own occupation, erroneously relying on an opinion that Ms. Neal's "medical records do not support physical functional limitations for the time period of April 21, 2017 and continuing" despite her treating providers writing her out of work and her suffering a transient ischemic attack during that time period.

36.     LINA's denial letters are riddled with attempts to "cherry-pick" the record for evidence that supports its denial and give little or no weight the plethora of evidence that supports Ms. Neal's disability.

37.    In denial letters dated December 7, 2017, March 9, 2018, and November 13, 2018, LINA afforded no credence to the subjective complaints of Ms. Neal.

38.    In denial letters dated December 7, 2017, March 9, 2018, and November 13, 2018, LINA failed to consider any of Ms. Neal's non-exertional limitations.

39.    As of this date, Ms. Neal has been denied benefits rightfully owed to her under the Plan. Defendant's decision to deny benefits under her long term disability policy was wrong, without basis and contrary to the evidence.

40.    Ms. Neal has met and continues to meet the Plan's definition of disabled.

41.    Ms. Neal has exhausted any applicable administrative review procedures, and Defendant's refusal to pay benefits is both erroneous and unreasonable and has caused tremendous financial hardship on Plaintiff.

**STANDARD OF REVIEW**

42.    The allegations contained in the previous paragraphs are re-alleged and incorporated by reference as if set out in full.

43.    "A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for

benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

44.    When discretionary authority is clearly granted and the insurer of an ERISA plan also acts as a claims administrator, there is a structural or inherent conflict of interest that mandates a 'heightened' arbitrary and capricious standard of review. *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 378 (2000).

45.    Upon information and belief, Defendant evaluated and paid all claims under the LTD Plan at issue, creating an inherent conflict of interest.

46.    "Under certain circumstances, a plan administrator's failure to comply with the letter of the claims procedures outlined in ERISA requires courts to eschew the more deferential arbitrary and capricious review normally applied to an administrator's discretionary decisions in favor of a more searching *de novo* review." *Halo v. Yale Health Plan*, 819 F.3d 42, 47 (2d Cir. 2016).

47.    "In other words, a plan's failure to establish or follow the claims-procedure regulation entitles the claimant to have his or her claim reviewed *de novo* in federal court." *Id.* at 53. An inability to "keep the beneficiary apprised to the claim assessment process" or "deliver[] reasonably timely and detailed decisions" are invalid exercises of discretion. *Id.* at 47.

48.    The Defendant did not establish and maintain a reasonable claim procedure or provide a full and fair review of Ms. Neal's claim as required by

ERISA. Instead, Defendant acted in its own pecuniary interests and violated ERISA by conduct including, but not limited to, the following: breaching its fiduciary duty to the Plaintiff; reviewing the claim in a manner calculated to reach the desired result of denying benefits; and failing to properly consider and credit the medical opinions of Ms. Neal's medical providers.

49.    In the alternative, should LINA be entitled to the arbitrary and capricious standard of review, the denial of Plaintiff's benefits constitutes a clear abuse of discretion.

## DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT

50.    The allegations contained in the previous paragraphs are re-alleged and incorporated by reference as if set out in full.

51.    "A decision is arbitrary and capricious . . . if it is found to be 'without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 486 (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995).

### A.    Defendant's Determination that Plaintiff Does Not Meet the Definition of Disability as Stated in the Plan was Erroneous and Unreasonable.

52.    The allegations contained in the previous paragraphs are re-alleged and incorporated by reference as if set out in full.

53.     Defendant failed to properly evaluate the effect Ms. Neal's conditions as a whole would have on her ability to work.

54.     As shown by their denial letters, LINA's conclusion that Ms. Neal was not disabled was based merely on hired reviewers' "cherry-picked" assessment of her medical records.

55.     The findings of LINA are contrary to the opinions of Ms. Neal's treating physicians, whose medical records detail the recurrent and overwhelming symptoms that Ms. Neal faces as a result of her disabling conditions.

56.     Defendant failed to even discuss Ms. Neal's job duties, specifically, the high level of processing, reasoning, and communication required of someone acting as a Project Specialist for Laboratory Corporation of America Holdings.

57.     Instead of acting as her fiduciary and in her best interests, Defendant opportunistically denied Ms. Neal the benefits due to her under the policy.

**B.    Defendant's Decision to Deny LTD Benefits was Not Supported by Substantial Evidence.**

58.     The allegations contained in the previous paragraphs are re-alleged and incorporated by reference as if set out in full.

59.     In its consideration of Ms. Neal's claim, LINA only retained paid consultants to review her medical records. The sole support for LINA's denial came from the opinions of its paid paper reviewers, who never actually examined

Ms. Neal, and their determination that Ms. Neal suffered from no restrictions or limitations.

60.     As part of the investigation of Ms. Neal's claim, LINA paid six doctors to review Ms. Neal's medical records and opine about her functional capacity. Those hired reviewers never met Ms. Neal, and most did not even speak with Ms. Neal's treating providers before issuing their reports.

61.     The policy allowed LINA to have Ms. Neal submit to an independent medical examination. Instead, LINA relied on file reviews.

62.     At every stage of the administrative review process, LINA wrongfully chose to give little weight to credible medical evidence from Ms. Neal's treating physicians and apparently gave significantly more weight to those non-treating reviewers.

### C.     Defendant Failed to Give Proper Consideration to the Opinions of Plaintiff's Treating Physicians.

63.     The allegations contained in the previous paragraphs are re-alleged and incorporated by reference as if set out in full.

64.     At every stage of the administrative review process, LINA failed to properly consider credible medical evidence from Ms. Neal's treating physicians.

65.     In weighing the opinions of Ms. Neal's physicians against those of the independent reviewers retained by the Defendant, the Court should consider the following factors: (i) the frequency of examination and the length, nature, and

extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) other relevant factors. *See Karanda v. Connecticut Gen. Life Ins. Co., et al.*, 158 F. Supp. 2d 192, 205 and n.8 (D. Conn. 2000) (*citing Durr v. Metropolitan Life Ins. Co.*, 15 F. Supp. 2d 205, 213 (D. Conn. 1998)).

66.     The Court in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003) recognized that "treating physicians, as a rule, have a greater opportunity than consultants to know and observe the patient as an individual." While *Black and Decker v. Nord* provides that the Court is not required to adopt a per se rule to treat a claimant's physicians' opinions with more weight than those of Defendant's medical assessors, "[c]ommon sense and a stream of legal precedent suggest, however, factual determinations of a treating physician are objectively more reliable." *Burt v. Metropolitan Life Insurance Co.*, No 1:04-CV-2376-BBM, 2005 U.S. Dist. LEXIS 22810, at *33 (N.D. Ga. Sept. 16, 2005); *see also Finazzi v. Paule Revere Life Ins. Co.*, 327 F. Supp. 2d 790, 795-96 (W.D. Mich. 2004) ("the Court is not obliged to 'rubber stamp' [defendant's] termination of benefits…").

67.     Paid experts are more often than not pre-disposed or preconditioned. Courts have consistently expressed their skepticism of such "experts" and held their reviews to be the very essence of arbitrariness and capriciousness. *Bennett v.*

*Kemper HAT-Svcs, Inc.*, 514 F. 3d 547, 554-55 (6th Cir. 2008); *Montour v. Hartford Life and Acc. Ins. Co.*, 588 F. 3d 623 (9th Cir. 2009); *Regula v. Delta Family Care Plan*, 226 F.3d. 1130, 1143 (9th Cir. 2001). The Supreme Court has acknowledged that "physicians repeatedly retained by benefits plans may have an 'incentive to make a finding of "not disabled" in order to save their employers money and preserve their own consulting agreements.'" *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003). The fact that their reports are consistently in conflict with the opinion of treating doctors' determinations should be viewed as evidence of a structurally conflicted process that results in bias. Clearly, in Ms. Neal's case, these decisions indicate that her treating physicians' evaluations should be afforded greater weight than the opinions of LINA's consultants.

68.     Ms. Neal's long-standing medical providers, who have no stake in the outcome of the case, reached the opinion that she was disabled based on their numerous personal examinations, testing and procedures. These decisions were based on the same evidence that Ms. Neal provided to LINA.

69.     Among others, Ms. Heather Boscia, NP indicated on May 11, 2017 that Ms. Neal was precluded from work because she was unable to perform any of her essential job duties. On this date, Ms. Boscia estimated a July 20, 2017 return to work date.

70.     At each subsequent appointment, Ms. Boscia delayed Ms. Neal's return to work date because of the deterioration of her condition and exacerbation of her symptoms.

71.     LINA failed to give Ms. Boscia's opinion any weight in the denial and subsequent appeals of Ms. Neal's claim.

72.     When analyzing Ms. Neal's claim for LTD benefits, LINA gave no weight to the opinions of Ms. Neal's treating physicians, who have indicated that Ms. Neal is disabled and unable to perform the material and substantial duties of her occupation.

73.     LINA's failure to give weight to the opinions of Plaintiff's treating physicians and providers is unreasonable, and is therefore arbitrary and capricious.

**D.     Defendant Failed to Obtain an IME and Relied Solely on Paper-Reviews as a Basis for Denial.**

74.     The allegations contained in the previous paragraphs are re-alleged and incorporated by reference as if set out in full.

75.     Ms. Neal's claim file is replete with medical records from her treating physicians extensively detailing her physical and mental limitations. Ms. Neal's physicians' assessments, treatment and medications they prescribed and administered, demonstrate that Ms. Neal's diagnosed conditions and symptoms of those conditions are extremely debilitating.

76.     Per the policy, LINA had the right to request Ms. Neal submit for an Independent Medical Exam where Ms. Neal would be examined in person by a physician, and their findings would be reported to LINA.

77.     No Independent Medical Examination was ever requested by LINA.

78.     To support the denial of Ms. Neal's benefits, LINA primarily relied on the reports of hired medical reviewers in its decision to deny Ms. Neal LTD benefits. These hired reviewers never examined Ms. Neal and rarely spoke with any of her treating physicians.

79.     On the few occasions where Ms. Neal's treating physicians were reached for comment by LINA's reviewers, Ms. Neal's treating physicians' knowledge and input were disregarded without cause or reason.

80.     In denial letter dated March 9, 2018, LINA relied on the opinions of two additional paid reviewers, Dr. Mostafa Farache and Dr. Eric. Neither Dr. Farache nor Dr. Chavez ever personally examined Ms. Neal, and Dr. Farache also failed to speak personally to Ms. Neal's treating physicians.

81.     The denial letter dated November 13, 2018 referenced reports prepared by Dr. Marcus Goldman and Dr. Topper. These are the third and fourth paid reviewers utilized by LINA rather than obtaining an Independent Medical Examination.

82.     The claim file also shows that LINA considered reports by the paid reviewers Dr. Lorin Voorhies and Dr. Peter Volpe, in reaching their decision to deny Ms. Neal's LTD benefits. These physicians never personally examined Ms. Neal nor spoke personally to Ms. Neal's treating physicians.

83.     Despite having knowledge of the restrictions and limitations set forth by Ms. Neal's treating physicians, LINA denied Ms. Neal's LTD benefits, unfoundedly declaring that Ms. Neal was capable of performing her own occupation as a Project Specialist, based primarily on the opinions of those medical reviewers who had never examined Ms. Neal, and several of which failed to speak with Ms. Neal's treating providers.

84.     Given the depth of understanding that can be gained from an in person examination of a patient by a physician, it is unreasonable that LINA failed to send Ms. Neal for any Independent Medical Exams and based its denial on reports from paid reviewers who never examined Ms. Neal in person.

**E.      Defendant Failed to Properly Credit Ms. Neal's Well-Documented Subjective Complaints.**

85.     The allegations contained in the previous paragraphs are re-alleged and incorporated by reference as if set out in full.

86.     Several of Ms. Neal's disabling impairments have subjective components; however, those impairments been diagnosed by her treating physicians based on her medical history, physical examinations, and observations.

The Defendant exceeds its discretion to ascertain a claimant's credibility by characterizing the bulk of Ms. Neal's treatment records as somehow flowing from her own subjective reports and thus equally subject to its rejection as non-credible.

87.     This dismissal of Ms. Neal's well-documented complaints of anxiety, depression, and suicidal ideations are analogous to cases involving subjective complaints of chronic pain.  In *Quigley v. UNUM Life Ins. Co. of America*, the Court held "[w]here the record reveals well-documented complaints of chronic pain, and there is no evidence in the record to contradict the claimant's complaints, the claim administrator, and the court, cannot discredit the claimant's subjective complaints." 340 F. Supp. 2d 215, 224 (D.Conn. 2004).

88.     An administrator may not exclude a claim for lack of objective medical evidence unless that standard was made "clear, plain and conspicuous enough [in the policy] to negate layman [Plaintiff's] objectively reasonable expectations of coverage." *Saltarelli v. Bob Baker Group Medical Trust et al.*, 35 F.3d 382, 387 (9th Cir. 1994); *See also May v. Metro. Life Ins. Co.*, 2004 U.S. Dist. LEXIS 18486, *26 (N.D. Cal. Sept. 9, 2004) ("MetLife abused its discretion by requiring that Plaintiff meet an additional requirement for eligibility beyond those imposed by the Plan."). As the Ninth Circuit has explained, some impairments are based on symptoms that are "entirely subjective." Defendants may not deny Plaintiff's claim because she could not provide objective proof where such proof is

not available. *See Duncan v. Continental Cas. Co.,* 1997 U.S. Dist. LEXIS 1582, *15-17 (N.D. Cal. Feb. 10, 1997) (finding an insurer improperly denied the claim of the Plaintiff, who had fibromyalgia, due to a lack of "objective medical evidence" to support her disability claim).

89.     Here, Ms. Neal provided both objective and subjective evidence of her disabling conditions.  Her medical records contain well-documented complaints of panic attacks, anxiety, nervousness, episodes of numbness/weakness. Accordingly, Defendant's decision to deny benefits was substantively unreasonable, and thus arbitrary and capricious, and LINA's denial should be overturned.

## F.     Defendants Failed to Properly Consider Ms. Neal's Non-Exertional Limitations.

90.     The allegations contained in the previous paragraphs are re-alleged and incorporated by reference as if set out in full.

91.     As reasoned by the Court in *Rabuck v. Hartford Life and Accident Ins. Co.*, in addition to exertional restrictions and limitations, the Court must also consider non-exertional limitations including (1) intellectual and psychological limitations, including those related to the side effects of prescription medications and pain; (2) limited manual dexterity; and (3) a limited ability to remain seated for an extended period of time. Such non-exertional limitations can be important aspects of vocational capacity. 522 F. Supp. 2d 844, 876-77 (W.D. Mich. 2007) (holding that failure to consider non-strength limitations of former company

22

president with short-term memory limitations rendered Transferable Skills Analysis "incredible").

92.     Ms. Neal's treating physicians consistently supported her disability claim in both treatment notes and medical statements provided to LINA and stated that Ms. Neal suffered non-exertional limitations, such as her inability to cope with work-related stress and inability to focus or concentrate. Plaintiff's secondary medical issues compound her primary problems, and it was unreasonable for the Defendant to fail to properly consider the impacts of Ms. Neal's non-exertional limitations in its decision.

93.     At medical appointments she had with her primary care physician, Ms. Neal completed a depression assessment. Ms. Neal had persistently high scores on these assessments, indicative of excessive symptoms of depression. On the Duke-Anxiety Depression Scale, Ms. Neal has persistently reported difficulty concentrating, trouble sleeping, chronic fatigue, and excessive nervousness. The ability to concentrate and the other factors examined by this assessment are an indispensable part of performing any occupation, and Ms. Neal's results from this and the other mental health assessments highlight that Ms. Neal has restrictions and limitations that would preclude her from performing her own occupation based upon her non-exertional limitations.

94.     In addition to several depression assessments, Ms. Neal's medical records indicate that she was suffering side effects from the prescription medications she was prescribed, including: drowsiness, dizziness, and difficulty sleeping.

95.     Failure to consider side effects of medications in determining whether an ERISA claimant is disabled is an example of arbitrary and capricious conduct. *Godfrey v. BellSouth Telecommunications, Inc.*, 89 F.3d 755, 759 (11th Cir. 1996).

96.     "[T]he general tolerance of off-task time is around 10-12% and an individual who needed a ten-minute break every hour would exceed that tolerance." *Mills v. Colvin*, 959 F. Supp. 2d 1079, 1084 (N.D. Ill. 2013).

97.     Another consideration of non-exertional requirements is an employee's ability to regularly attend work. *See Conner v. Shalala*, 900 F. Supp. 994, 1003 (N.D. Ill. 1995) (stating that "in unskilled work the tolerance level would not exceed two absences per month"); *see also Dennis v. Astrue*, 665 F. Supp. 2d 746, 753 (W.D. Ky. 2009) (stating that "employers typically will tolerate no more than two absences per month").

98.     Undoubtedly, a return to work in any capacity would increase Ms. Neal's symptoms and fatigue, requiring additional rest, medication and treatment which would lead to the inability to maintain an acceptable absentee rate.

99.     Clearly, a decision asserting that Ms. Neal can gainfully work in any reasonable occupation given her non-exertional impairments and side effects from her medications is illogical.

100.   LINA's failure to consider Ms. Neal's non-exertional limitations was substantively unreasonable given the non-exertional limitations that preclude Ms. Neal from performing the material and substantial duties of her own occupation.

## CAUSES OF ACTION

## COUNT ONE
## ERISA (Claim for Benefits Owed under Plan)

101.   The allegations contained in the previous paragraphs are re-alleged and incorporated by reference as if set out in full.

102.   At all times relevant to this action, Ms. Neal was a participant of the Plan underwritten by LINA and issued to Laboratory Corporation of America Holdings, and was eligible to receive disability benefits under the Plan.

103.   As more fully described above, the denial and refusal to pay Ms. Neal benefits under the Plan for the period from at least on or about October 20, 2017 through the present constitutes a breach of Defendant's obligations under the Plan and ERISA.  The decision to terminate benefits to Ms. Neal constitutes an abuse of discretion as the decision was not reasonable and it was not based on substantial evidence.

104.   Ms. Neal brings this action to recover benefits due to her and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(1)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and otherwise enter an Order providing that:

1.      The applicable standard of review in this case is *de novo*;

2.      By a preponderance of the evidence, the Defendant has breached its fiduciary duty to the Plaintiff by wrongfully denying her LTD benefits owed to her through the Plan;

3.      In the alternative, if the court determines that the applicable standard of review is the arbitrary and capricious standard, the court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate arbitrary and capricious review and find that Defendant's decision to wrongfully deny Plaintiff LTD benefits was unreasonable, arbitrary and capricious, and wholly unsupported by substantial evidence;

4.      From at least October 20, 2017 through the present, Ms. Neal met the Plan's definition of disabled;

5.      Defendant shall pay Ms. Neal all benefits due for the period from at least October 20, 2017 through the present in accordance with the Plan;

6.      Defendant shall pay to Plaintiff such prejudgment interest as allowed by law;

7.      Defendant shall pay Plaintiff's costs of litigation and any and all other reasonable costs and damages permitted by law;

8.      Defendants shall pay attorney's fees for Plaintiff's counsel;

9.      Plaintiff shall receive such further relief against Defendant as the Court deems lawful, just and proper.

Respectfully submitted this the 18h day of October, 2019.

*/s/ Peter H. Burke*_____
Peter H. Burke (ASB-1992-K74P)
pburke@burkeharvey.com
BURKE HARVEY, LLC
3535 Grandview Parkway, Suite 100
Birmingham, Alabama 35243
Phone:    205-930-9091
Fax:    205-930-9054
*Attorney for Plaintiff Kiawana Neal*

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:**

Life Insurance Company of North America
c/o CT Corporation System
2 North Jackson Street
Suite 605
Montgomery, AL  36104